UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
FILED

NOV - 5 2019

David J. Bradley, Clerk of Court

19 CR 796

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | Criminal No. _____ |
| MERRIMON BAKER,<br>Defendant. | § § § | |

## INFORMATION

The United States Attorney for the Southern District of Texas charges:

### General Allegations

At all times material to this Information, unless otherwise specified:

### Compounded Drugs

1. Compounded pharmaceuticals were drugs that were combined, mixed, or altered from other drugs by licensed pharmacists or other licensed practitioners, pursuant to valid prescriptions issued by licensed medical professionals, including physicians, physician assistants, and nurse practitioners (collectively "prescribers"), to meet the specific needs of individual patients.

2. Although ingredients in compounded medications were generally approved by the United States Food and Drug Administration ("FDA"), the compounded form of those medications were not. That is, the FDA did not verify the safety, potency, effectiveness, or manufacturing quality of compounded drugs.

### Health Care Benefit Programs

*Commercial Insurance*

3. Commercial insurance companies provided health care benefits for individuals enrolled with their plans, often referred to as "members." These private insurance companies were

1

"health care benefit programs" within the meaning of Title 18, United States Code, Section 24(b), that affected commerce.

4. Commercial insurance companies, employers, and private entities offered drug plans, which were administered and operated by Pharmacy Benefit Managers ("PBMs"). A PBM acted on behalf of one or more drug plans. Through a plan's PBM, a pharmacy could join the plan's network.

5. A member of a privately insured drug plan could fill a prescription at a pharmacy and use his or her plan to pay for some or all of the prescription.

6. Express Scripts, Inc. ("Express Scripts" or "ESI"); Argus (currently known as DST Solutions); Caremark LLC, doing business as ("d/b/a") CVS/Caremark ("CVS/Caremark"); OptumRX, Inc.; Catamaran; and Prime Therapeutics, LLC, among others, were PBMs, and were health care benefit programs, as defined by Title 18, United States Code, Section 24(b), that affected commerce.

*The TRICARE Program*

7. TRICARE was a health care program of the United States Department of Defense ("DOD") Military Health System that provided coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and Reserve members, retirees, their families, and survivors. Individuals who received health care benefits through TRICARE were referred to as TRICARE "beneficiaries." The Defense Health Agency ("DHA"), an agency of DOD, was the military entity responsible for overseeing and administering TRICARE.

8. TRICARE provided coverage for certain prescription drugs, including certain compounded drugs that were medically necessary and prescribed by a licensed medical professional.

2

9. In or around May 2015, the DHA implemented a new screening procedure to ensure that TRICARE-covered compounded drugs were safe, clinically necessary, and cost effective, which resulted in a steep decline in TRICARE's reimbursements for compounded drugs.

10. TRICARE beneficiaries could fill their prescriptions through military pharmacies, TRICARE's home delivery program, network pharmacies, and non-network pharmacies. Once a beneficiary filled a prescription, the pharmacy would collect any applicable copay from the beneficiary, dispense the drug to the beneficiary, and submit a claim for reimbursement to Express Scripts, the PBM that administered TRICARE's prescription drug benefits, which would, in turn, adjudicate the claim and reimburse the pharmacy directly or through a Pharmacy Services Administrative Organization ("PSAO"). To become a network pharmacy, a pharmacy agreed to be bound by, and comply with, all applicable State and Federal laws, specifically including those addressing fraud, waste, and abuse.

11. TRICARE was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b) that affected commerce.

### Claims Adjudication

12. Providers, including pharmacies, entered into contractual relationships with PBMs either directly or indirectly. If indirectly, providers first contracted with pharmacy network groups, or PSAOs, which then contracted with PBMs on behalf of providers. Providers, whether directly or indirectly, by contracting with PBMs, agreed to comply with all applicable laws, rules, and regulations, including all applicable federal and state anti-kickback laws.

13. For prescription drugs, including compounded medications, to be reimbursed, health care benefit programs required that they be dispensed pursuant to a valid prescription and be medically necessary for the treatment of covered illnesses or conditions.

14. Copayments set by the health care benefit programs were the monetary amounts or percentages paid by beneficiaries and members for health care services and items received.

15. Most, if not all, PBMs required participating pharmacies to collect and make good faith efforts to collect copayments from beneficiaries and members at the time of billing, and specified that copayments could not be systematically waived or reduced, in part because consistent copayment collection was a fraud prevention measure—copayments gave beneficiaries and members financial incentives to reject medications that were not medically necessary or had little to no value to their treatments.

16. Upon receiving prescriptions and dispensing prescription drugs, pharmacies submitted claims to health care benefit programs or PBMs. Health care benefit programs or PBMs reimbursed pharmacies at specified rates, minus any copayments to be paid by beneficiaries.

17. PBMs adjudicated claims submitted electronically in states other than Texas.

**The Defendant, Relevant Individual, and Entities**

18. Defendant **MERRIMON BAKER**, also known as "Spike," or "Dr. Spike," a resident of Bullard, Texas, was a sales representative. As of November 2007, he was no longer licensed to practice medicine in the State of Texas.

19. Doctor 1 was a Medical Doctor licensed to practice in the State of Texas.

20. OmniPlus Healthcare, L.P.; Alternative Medicine and Pharmacy, Inc., d/b/a OmniPlus Pharmacy ("OmniPlus"); Omni-One-Med Pharmacy Services, LLC ("Omni-One-Med"); Safety and Health Technology, LLC, d/b/a Accu-Care Pharmacy; Healthy Pharmacy Solutions, Inc.; Kremco Pharmacy, LLC, d/b/a Kremco Pharmacy; and JSW Prosperity, LLC, d/b/a 1 Stop Pharmacy (collectively "the Pharmacies") were licensed pharmacies formed, acquired, or purchased between in or around March 2013 and in or around 2016.

## COUNT ONE
### Conspiracy to Commit Healthcare Fraud
### (18 U.S.C. § 1349)

21. The allegations in paragraphs 1 through 20 of this Information are realleged and incorporated by reference as though fully set forth herein.

22. Between in or around 2013 and continuing through in or around 2015, the exact dates being unknown, in the Houston Division of the Southern District of Texas and elsewhere, the Defendant,

**MERRIMON BAKER**

did knowingly and willfully combine, conspire, confederate, and agree with others known and unknown to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined by Title 18, United States Code, Section 24(b), and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

### Purpose of the Conspiracy

23. It was an object and purpose of the scheme for the Defendant **MERRIMON BAKER** and his coconspirators known and unknown to unlawfully enrich themselves by, among other things, submitting or causing the submission of false and fraudulent claims to health care benefit programs, that is, TRICARE and other government and private health care benefit programs, generally administered by PBMs, for compounded and other drugs that were often medically unnecessary, not provided or not provided as billed, based on an invalid prescriber–patient relationship, induced by kickbacks or bribes, dispensed in violation of state licensing

requirements, or for which copayments were not properly collected.

## Manner and Means of the Conspiracy

The manner and means by which **MERRIMON BAKER** and his coconspirators sought to accomplish the object and purpose of the conspiracy included, among other things:

24. Coconspirators of **MERRIMON BAKER** founded, owned, and operated Pharms, LLC, a management company, and the Pharmacies. The Pharmacies contracted with several PBMs to file claims for reimbursement for compounded and other drugs that were often medically unnecessary, not eligible for reimbursement, and sometimes not provided.

25. The Pharmacies formulated, mixed, and dispensed compounded drugs, "kits," "patches," and other drugs (collectively "compounded and other drugs") not based on individualized patient need, but instead based on formulas designed to maximize reimbursements from government and private health care benefit programs.

26. Beginning in or around 2013, the Pharmacies' owners hired Defendant **MERRIMON BAKER** as a Sales Representative, and financially incentivized him through kickbacks and bribes, often disguised as commission payments that were usually based on the reimbursements from government and private health care benefit programs, administered by the PBMs, to the Pharmacies for compounded and other drugs.

27. To maximize reimbursements, **MERRIMON BAKER** signed up himself, his friends, and others to receive compounded and other drugs that were often medically unnecessary, not eligible for reimbursement, and sometimes not provided.

28. Many times, the Pharmacies waived copayments for **MERRIMON BAKER** and those he referred, even though TRICARE, and other government and private health care benefit programs, and the PBMs that administered them, required the Pharmacies to collect copayments.

29. Although Doctor 1 purportedly prescribed the expensive compounded drugs, several individuals who were purportedly prescribed compounded drugs by Doctor 1 were not seen or treated by Doctor 1. Instead, **MERRIMON BAKER** fraudulently posed as Doctor 1 or as "Dr. Spike," and fraudulently signed prescriptions as if he were Doctor 1, even though he was not a licensed medical professional.

30. Between in or around May 2013 and in or around April 2015, **MERRIMON BAKER** caused health care benefit programs to pay the Pharmacies approximately $3.8 million for compounded drugs purportedly prescribed by Doctor 1. Between in or around July 2013 and in or around March 2015, the Pharmacies paid **MERRIMON BAKER** over $900,000 in kickbacks and bribes, often disguised as commission payments on those prescriptions.

All in violation of Title 18, United States Code, Section 1349.

## NOTICE OF CRIMINAL FORFEITURE
### (18 U.S.C. § 982(a)(7))

31. Pursuant to Title 18, United States Code, Section 982(a)(7), the United States of America gives notice to **MERRIMON BAKER** that, upon conviction of Count One, all property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense is subject to forfeiture.

(continued on next page)

## Money Judgment and Substitute Assets

32. Defendant **MERRIMON BAKER** is notified that upon conviction, a money judgment may be imposed against him. In the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property up to the amount of the money judgment.

        RYAN K. PATRICK
        UNITED STATES ATTORNEY

        ALLAN MEDINA
        ACTING CHIEF
        HEALTH CARE FRAUD UNIT
        U.S. DEPARTMENT OF JUSTICE

        */s/ Aleza Remis*
        ALEZA REMIS
        Assistant Chief
        DEVON HELFMEYER
        Trial Attorney
        Fraud Section, Criminal Division
        U.S. Department of Justice
        1000 Louisiana, St. 2300
        Houston, Texas 77002
        Aleza.remis@usdoj.gov
        (713) 567-9406